CECIL M. STEWART, Appellee, v. R. C. HALL, Defendant, JAMES A. FIKE and L. B. HANSON, Defendants and Appellants.

Fraudulent conveyances: INNOCENT PURCHASERS: EVIDENCE. In this action to rescind and cancel conveyances of real and personal property on the ground of fraud, the evidence is held to show that the grantees were not innocent purchasers.

Same: PARTIES: REAL PARTY IN INTEREST. Where the plaintiff in an action to rescind conveyances for fraud, although an assignee, alleges that he is the party in interest and real owner of the property, and has made the assignors parties, who appear and disclaim any interest in the subject matter of the suit, the defendants are in no position to complain that the plaintiff is not the real party in interest, when deprived of no right of counterclaim or affirmative defense.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

WEDNESDAY, MARCH 13, 1912.

SUIT in equity to rescind and to set aside conveyances of property, real and personal, on the ground of fraud. There was a decree for the plaintiff, and the defendants Hanson and Fike appeal.—*Affirmed.*

*Lysle I. Abbott* and *Dudley & Coffin,* for appellant Fike.

*Henry & Henry,* for appellant Hanson.

*James C. Hume,* for appellee.

EVANS, J.— This case was before us on a former appeal. 144 Iowa, 113. The former appeal was prosecuted by the same defendants as appellants. On such appeal the case was reversed because of defect of parties. Upon a remand of the case, this defect was cured, and all persons who had any interest in the transaction out of which the suit arose were made parties, and the case was again tried in the district court with the same result as before. We adopt the statement of facts made in our former opinion, and will avoid repetition thereof as far as practicable.

The transaction which is assailed was had between ·the plaintiff and the defendant Hall. The fraud charged was participated in, not only by Hall, but by the defendant Akin, as purported agent for Hall, and by defendant Schermerhorn, as purported agent for plaintiff. The transaction resulted in the transfer to Hall, by bill of sale on behalf of plaintiff, of all the property of the Interior Woods-Fittings Manufacturing Company of Des Moines, Iowa, of which company the plaintiff was the president, secretary, treasurer, and sole stockholder. It also resulted in the conveyance to Hall, by deeds, of a large amount of real estate located in Des Moines.

Immediately thereafter defendant Hanson became a purchaser of the personal property by written bill of sale,

and the defendant Fike became the purchaser from Hall of all the real estate by appropriate deeds.

1. FRAUDULENT CONVEYANCES: innocent purchasers: evidence.

The contention of each appellant is that he was an innocent purchaser for value of the property claimed by him, and without any notice of any infirmity in the title of Hall. Hanson came upon the scene from Sheldon, N. D. Fike came from Omaha. Both of them were experienced traders. Both of them had previous acquaintance with Akin. The consideration parted with by Hanson consisted principally of old machinery. That of Fike consisted of equities in real estate. Though their contracts were made nominally with Hall, the negotiations were conducted largely by Akin. Practically all the property consideration parted with by both defendants passed, either directly or indirectly, to Akin, and not to Hall. Plaintiff's conveyances to Hall were made on April 13, 1907, and the transaction was repudiated on or about April 25th following, and this suit was brought on April 27th. On the former appeal, we announced our conclusion that the defendants Hall, Akin, and Schermerhorn were guilty of an undoubted fraud in the transaction. Such was the holding of the trial court, and such defendants did not appeal. As to whether the appellants, Hanson and Fike, were chargeable with notice of the fraud, no intimation was given in such opinion. In view of our reversal because of defect of parties, and in view of the necessity of a new trial for that reason, we deemed it proper to withhold all intimation on that question. The second trial was had upon the same testimony as the first, with the further testimony of two additional witnesses. We may as well say now that upon our former consideration of the case we were strongly impressed upon that record that the appellants were not entitled to protection as innocent purchasers. If we could have reached the contrary conclusion at that time, we would doubtless

have reversed the case upon that ground, and would thereby have made final disposition of it.

We have now for the second time given a careful consideration to all the testimony, and we reach the conclusion that the decree of the trial court was right. The evidence to impeach the innocence and good faith of these appellants is altogether circumstantial. A complete discussion of it would be necessarily lengthy. In view of our agreement with the conclusions of the trial court, we will not enter upon such discussion. It must be sufficient to say that we are united in our conclusion in that respect.

Two or three circumstances may be mentioned briefly as an index to the general character of the circumstances. Hanson had had many dealings with Akin for many years. He had also met Hall some years before. His negotiations of purchase were carried on by correspondence. All of this correspondence has been lost, except one letter. The property which Hanson proposed to transfer to Hall consisted of $20,000 of corporation stock in the Farmers' Land Company, $10,000 of oil stock, seven or eight secondhand threshing machines, and several well drills, all located in North Dakota. There were also some farmers' notes, the makers of which were unknown to Hall. The negotiations being thus completed, Hanson executed his bill of sale to Hall while he was still in North Dakota, and brought it with him to Des Moines, where he arrived on the night of April 24th. Hall was still more prompt. Before Hanson arrived, Hall had already executed and placed on record a bill of sale to him of the Des Moines property. On the morning of the 25th, Hanson undertook to take possession, but was frustrated by the repudiation of Stewart. There had been no inspection by either party personally of the respective properties before the transfer. The Farmers' Land Company was the name under which Akin operated the land business. It had a purported capital of $50,000 *upon its stationery*. It had in fact no assets, ex-

cept its stationery and its office fittings. Hanson had received this stock from Akin in purported settlement of long-standing accounts of Akin, amounting to several thousand dollars. The $10,000 of oil stock had also been received from Akin. Hanson testified that he never investigated its value. It had no value. Akin was insolvent. Fike arrived in Des Moines on April 16th or 17th, and purchased all the Des Moines real estate from Hall in one day. The consideration consisted of an equity in a Nebraska residence property and another equity in a Jones county farm.

Hall had never seen either of them. He had no acquaintance with Fike. Akin, however, lived at the time upon the Nebraska property. Fike presented no abstract of title, and Hall made no investigation of his title. Fike investigated Hall's title to the extent of conferring with Hall's attorney and receiving assurance from him concerning the title. Fike executed no conveyance on that day; his wife not being with him. Fike's testimony shows, however, that Hall urged him to accept a conveyance from him and to place it on record while in Des Moines; and that Hall was willing to trust him to carry out his part of the contract later. Fike remained in Des Moines for two or three days. Before Fike left Des Moines, Hall had executed the conveyances and made formal delivery of the same to him. Fike then returned the deed or deeds to Hall, in order that Hall might place them on record. Hall did place them on record. At the time of placing them on record he had received nothing from Fike. There was no written contract or preliminary memorandum of any kind between them. Later, at Omaha, Fike and his wife executed conveyances of the equities bargained for; but Hall was not named therein as grantee. At Akin's request, the deeds were drawn in blank, with no grantee named therein, and were delivered in that form to Akin. Hall does not appear to have exercised any dominion over

any of such property at any time afterwards. We will not pursue the statement. There is much in the testimony, both of Hanson and of Fike, that is inconsistent and contradictory, and we find it difficult to ascertain from their testimony just what they claim as to some details of their transactions.

It is urged upon' us by appellants that there is still a defect of parties, and that the plaintiff is not the real party in interest, and a reversal is again demanded upon that ground. Before the last trial, the plain- tiff amended his petition and averred that he was the party in interest, and that he was the real owner of the property conveyed. He also brought the other parties into court by proper amendment and no- tice. Such parties appeared, admitted all the allegations of his petition, and disclaimed any interest in themselves in the subject of litigation. We think this was sufficient. *White v. C. N. W. Ry.*, 145 Iowa, 389. We need not go into details of the arrangement between the plaintiff and his alleged assignors, nor inquire into the nature or extent of the consideration passed from the plaintiff to them. It is argued by the appellants that the very nature of such consideration makes them proper parties in interest in this litigation. This is a question, however, which can not concern the appellants. The parties were brought into court. The decree in favor of the plaintiff is binding upon them. The same decree which holds appellants liable to the plaintiff protects them against further liability to the plaintiff's assignors. The appellants have no other interest in the question of proper parties. They have not been deprived of any right of counterclaim or affirmative de- fense which would be or would have been available to them as against any of the alleged parties in interest, other than the plaintiff. We have no need, therefore, in this case to determine the relative rights of the plaintiff and his as- signors as between themselves.

2. SAME: parties: real party in interest.

The conclusion reached by us in the first division of this opinion renders it unnecessary that we consider any of the questions raised in the receivership proceedings, or any of the appellants' exceptions to the receiver's report.

The decree of the district court is, in all respects, *affirmed.*